FILED

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

2015 MAR 13 P 1:07

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

Erik B. Cherdak
600 Cameron Street
Alexandria, Virginia 22314

    *Plaintiff,*

    *v.*

Marriot International, Inc.
10400 Fernwood Road
Bethesda, Maryland 20817

    *Defendant.*

Case No. 2.15cv106
RAJ/DEM

**COMPLAINT FOR PATENT
INFRINGEMENT**

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

*Comes Now*, Plaintiff Erik B. Cherdak (hereinafter "Plaintiff" or "Cherdak"), *Pro Se*, and in and for his Complaint against the above-named Defendant, states as follows:

### THE PARTIES

1.    Plaintiff is an individual residing in Gaithersburg, Maryland. Plaintiff's maintains his principal place of business relative to enforcement of his patent and other intellectual property rights at 600 Cameron Street, Alexandria, Virginia 22314. At all times relevant herein, Plaintiff has been and is the sole owner of U.S. Patent No. 8,915,823 (hereinafter the "patent-in-suit").

2.    Defendant Marriot International, Inc. is a publically traded corporation (NYSE: MAR) organized under the laws of the State of Delaware, and having its principal place of business at 10400 Fernwood Road Bethesda, Maryland 20817.

## JURISDICTION AND VENUE

3.      This is an action for Patent Infringement of U.S. Patent No. 8,915,823 assigned to Plaintiff under the Laws of the United States of America and, in particular, under Title 35 of the United States Code (Patents – 35 USC § 1, *et seq*.).  Accordingly, jurisdiction and venue are properly based in accordance with Sections 1338(a), 1391(b) and (c), and/or 1400(b) of Title 28 of the United States Code.

4.      Defendant directly operates company-owned hotels and other properties and oversees the management of numerous other hotels and properties throughout the United States and, in particular, in this judicial district of Virginia.  Based on Defendant's 2014 SEC Form 10K for the period ending December 31, 2014, Defendant owns, operates, manages, controls, and/or oversees operations of more than 4000 Hotels, Guest-centric and other types of properties throughout the United States and/or abroad under numerous brand names and trade/service marks including, but not limited to, The Ritz-Carlton®, BVLGARI® Hotels & Resorts, EDITION®, JW Marriott®, Autograph Collection®, Renaissance® Hotels, Marriott Hotels®, Marriott Executive Apartments®, Marriott Vacation Club® , Gaylord Hotels® , AC Hotels by Marriott® , Courtyard by Marriott® ("Courtyard®"), Residence Inn by Marriott® ("Residence Inn®"), SpringHill Suites by Marriott® ("SpringHill Suites®"), Fairfield Inn & Suites® , TownePlace Suites by Marriott® ("TownePlace Suites®"), Protea Hotels® , and Moxy Hotels®.  In the U.S. alone, Defendant owns, operated, licenses, franchises and/or has interests in the successful operation of approximately 690 hotels and properties under the aforementioned brand names and marks. Defendant owns and operates a worldwide,

online-accessible reservations and planning system to allow property users and hotel guests, for example, to book and purchase hotel and other in-property services 24 hours a day, 365 days per year.   At all times relevant herein, Defendant has engaged in the infringement of and/or induced the infringement of and/or committed contributory infringement of the patent-in-suit patent throughout the United States, including, but not limited to, such significant acts in this judicial district of Virginia, USA.

## FACTS

5.      U.S. Patent No. 8,915,823 issued from the U.S. Patent and Trademark Office (USPTO) on December 23, 2014.  The '823 Patent was duly and properly assigned to Plaintiff Cherdak.  A copy of the '823 patent is attached hereto at **Exhibit 1**.

6.      As an operator and franchisor of hotel and other guest-centric properties, Defendant regularly requires company-owned and franchised facilities to provide in-property fitness facilities in which hotel guests and others are encouraged to engage in cardio workout regimens using cardio exercise machines such as cardio treadmills, cardio elliptical machines, cardio stair climbers and recumbent and stationary bicycles. Defendant has intentionally set out to make in-property fitness facilities within hotels and other properties under the Marriot® brand a vital amenity to entice hotel guests and others to purchase coveted room-nights.   In fact, in many properties owned, operated, managed, franchised and/or in which Defendant has an interest in the success of such properties, Defendant recognizes and caters to hotel guests and property users looking for "fitness centers with state-of-the-art exercise equipment." *See* **Exhibit 2** (Excerpt from Defendants' 2014 SEC Form 10-K at page 15 *in re* Defendants' AC Hotels by Marriot® brand).

7.     In fitness centers owned/operated within Defendants' properties ("in-property fitness centers"), Defendant provisions cardio exercise machines now allowing exercisers to link their smartphones to such cardio exercise machines to facilitate customized workout regimens, exercise tracking, and overall wellness. In many in-property facilities, Defendant has incorporated cardio treadmill machines, elliptical machines, stationary type bicycles, etc. that facilitate wireless communications with Apple® and Android™ based smartphones to enhance and customize workout regimens and to allow hotel guests, for example, to engage in exercise tracking and monitoring (e.g., tracking of workout metrics such as cardio machine speed over time, calories burned, etc.).  Such workout options have become critical amenities for hotel operators within Defendant's family of hotels and properties to provide in the very competitive hotel/room-night marketplace.   Many travelers look for fitness facility uniformity in their selection of where to lodge and Defendant is keenly aware of fitness-centric service offerings as being vital selling features in the sales process related to the marketing and sale of lodging services. In fact, many hotel guests and exercisers will not stay in a particular hotel unless that hotel offers workout amenities that include exercise and workout tracking services such as covered by the '823 patent-in-suit.

8.     As a hotel owner, operator, licensor and franchisor, Defendant widely advertises and promotes the "high-tech" exercise and workout amenities within the hotels in their nationwide hospitality system.   Defendant regularly claims that hotel guests and customers can use their portable electronic devices (e.g., smartphones, MP3/iPod devices) such as by coupling and connecting the same to cardio exercise machines within in-hotel fitness facilities. Take for example, the Marriot® Marquis™ Hotel on Broadway

in New York City. There, Defendant and/or its operators advertise the incorporation of high-tech exercise facilities as service offerings within an in-property fitness facility that rivals some of the most elaborate and state-of-the-art workout centers anywhere else in the word. In the Marriot® Marquis™ Hotel, the in-property fitness center appears as shown in the picture below.



*See* **Exhibit 3** (website image from the publically accessible Internet page: http://www.marriott.com/hotel-info/nycmq-new-york-marriott-marquis/fitness/hul0cn5/home-page.mi). Marriot® advertises the Marquis™ in-property fitness facility as one that that includes: "New Equipment in our hotel gym includes Life Fitness [Discover Bikes, Discovery Treadmills, etc.]....Life Fitness is the first in the fitness industry to operate on a groundbreaking open technology platform called LFOPEN, which means exercisers have more options to personalize their workouts. Its additional LFCONNECT app is compatible for both Android® and Apple® devices." *Id.*   Defendant's advertising entices potential hotel guests to purchase coveted room-nights by asserting that hotel guests can use their Apple® or Android® products (e.g., smartphones) in combination, for example, with LIFE FITNESS® branded cardio exercise equipment as part of in-property service offerings. In the image above, the treadmills (right side of image), the

recumbent stationary bikes (left side of image), and the cross-trainers (left side of image) all support smartphone connectivity in service offerings provided in the in-property facility as shown.

9.      Defendant's use of LIFE FITNESS cardio exercise equipment does in fact support the operations and methods advertised by Defendant and its franchisees that can and do regularly take place within Defendant's hotels as operated under many different brands. LIFE FITNESS developed a set of products, technologies and open APIs (open source-code application program interfaces) that facilitate functional workout operations carried out by Defendant and that are covered by claims of the '823 patent-in-suit.  The cardio treadmills shown in the image contained within paragraph 8, *supra*, incorporate electronics and the aforementioned open-source technologies that facilitate operation of "Apps" that are free and available for both Apple and Android Products, namely, the LFCONNECT APP that operates as a mobile phone/smartphone application program and front-end interface to allow users to access the LFCONNECT website to download customized workout programs to correspondingly equipped cardio exercise machines (e.g., certain LIFE FITNESS cardio exercise machines as shown).  The cardio exercise machines shown in the picture in paragraph 8, *supra*, for example, like the thousands of cardio exercise machines that are operating within fitness facilities within Defendant's company-owned and franchised hotels when used during exerciser workout regimens, directly carry out the functional steps of establishing a connection (wired or wireless) between an Apple or Android Product (e.g., an Apple or Android smartphone), communicating personalized workout and machine metrics over that connection, generating workout data based on sensor data (e.g., from a body sensor, a cardio machine

sensor, or some other sensory device), and communicating that workout data to at least one of either the Apple or Android Product and a back end system (e.g., a website, etc. like or similar to www.lfconnect.com). The LF CONNECT smartphone Application Program ("APP") allows viewing of workout metrics on a smartphone, as well as, allowing for transfer of such metrics to the LF CONNECT website for personalized workout monitoring by hotel guests during their lodging stays. The LF CONNECT smartphone APP may be downloaded, installed and/or operated within one of thousands hotels owned, operated and/or franchised by Defendant.

10.     As an owner and operator of hotels under many different brands, Defendant is directly carrying out operations allowing hotel guests to enjoy the amenities provided by in-hotel high-tech fitness facilities. As a franchisor and licensor with tight control over its franchisees of Defendant's many branded hotels, Defendant encourages, entices induces and mandates that others to stay "true" to Marriot's branded missions when they own and operate high-tech fitness facilities in which hotel guests can and do engage in customized workouts to directly realize the benefits of exercise tracking that is achieved by employing cardio exercise machines that support the ability to couple to personal content devices like Apple and Android smartphones. In all cases, Defendant acts as the central operator and advertiser of hotel amenities for use by hotel customers who can and do engage in technology-based workouts, take advantage of branded consistency in terms of in-hotel workout amenities and operations, and who enjoy the benefits of automated workout customization and workout performance tracking from hotel to the next – and by merely carrying one device – their Android or Apple smartphone. Defendants owns

and/or operates the centralized property management and hotel-room booking systems available and marketed for public use at www.marriot.com.

11.    Defendant regularly and routinely performs the necessary operations and methodic steps within in-property fitness facilities within Defendant's company-owned and franchised hotels that are claimed in the combinations of method steps defined by claims of the '823 patent-in-suit.

## COUNT I – PATENT INFRINGEMENT

Paragraphs 1 through 11 are hereby incorporated by reference as if recited verbatim herein.

12.    Given the validity and enforceability of the '823 patent-in-suit against present and future infringing conduct prohibited under the U.S. Patent Act (35 USC § 1, *et seq.*), Plaintiff, *inter alia*, possesses the right to pursue a cause of action against Defendant for its own direct conduct to offer for sale, to sell, and to use and provision certain exercise fitness facility services to exercisers that are covered by the claims of the '823 patent-in-suit and in direct violation of 35 USC § 271(a) (direct infringement).   **Exhibit 4** contains Infringement Charts that demonstrate exemplary instances of direct patent infringement of at least Claims 1, 2, 3, 4, 6, 7, & 8 as such direct patent infringement is informed by publically available information.   **Exhibit 4** and the infringement charts found therein are incorporated herein by reference as if fully recited herein and therefore form an express part of this pleading.   *See* Fed. R. Civ. P. Rule 10(c).   Discovery will likely reveal additional materials that will further inform the infringement inquiry now before the Court.   Discovery in this case likely will reveal additional instances of infringement such as may be related to additional in-property services and claims of the patents-in-suit.   The

fitness facility services offered by Defendant and its franchisees perform all of the method steps defined in the asserted claims in the same physical locations and within the United States (as shown and discussed in the Infringement Charts in attached **Exhibit 4**).

13.   As a marketer of fitness club facilities and services known by Defendant to be the subject of Plaintiff's claim of patent infringement as set forth in this Complaint, Defendant is liable for indirect patent infringement and, in particular, under appropriate legal standards related to application of 35 USC § 271(b) (inducement to infringe a patent) and 35 USC § 271(c) (contribution to the acts that constitute patent infringement). At a minimum, any continued conduct to induce others to infringe and to contribute to the infringement of the '823 patent-in-suit such as by inducing others to operate and to use in-hotel fitness facilities and by contributing to such infringement in accordance with applicable legal standards can only be considered to be induced and contributory patent infringement.

14.   Defendant's direct and indirect patent infringement in violation of the U.S. Patent Act will continue without this Court's intervention to address and remedy such patent infringement.

15.   Because of Defendant's infringing conduct in the marketplace, Plaintiff and his '823 patent-in-suit will continue to be injured.   Accordingly, the U.S. Patent Act mandates that Plaintiff be granted remedies including, but not limited to, equitable relief to stop prospective infringement, and damages for such patent infringement in an amount of no less than a reasonable royalty.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief against Defendants Striiv, Inc. as follows:

A.     For a judgment that Plaintiff's '823 patent-in-suit is infringed by Defendant (including, but not limited to, its subsidiaries, predecessors-in-interest and business units however and wherever formed, etc.) in that Defendant has acted and continues to act in unauthorized ways to bring to market and encourage the infringing provision of certain fitness facility services within Defendant's company-owned and franchised fitness facilities;

B.     That a permanent injunction be issued against continued infringement of the patent-in-suit by Defendant and its parents, subsidiaries, officers, directors, employees, affiliates, representatives and agents, and all those acting in concert with or through Defendant, directly or indirectly, including, but not limited to, distributors, customers, and other retailers;

C.     That an accounting be ordered and had for damages caused to Plaintiff by Defendant's acts in violation of the U.S. Patent Act (35 USC § 1, *et seq.*) together with pre-judgment and post-judgment interest;

D.     That damages be assessed and awarded to Plaintiff in an amount based on no less than a reasonable royalty in relation to the infringing in-property fitness facility services as specified herein;

E.     That any damages awarded in accordance with any prayer for relief be enhanced and, in particular, trebled in accordance with the U.S. Patent Act (35 USC § 1,

*et seq.*) for Defendant's acts which are found to be willful acts of patent infringement; and

F.      Such other and further relief as this Court shall deem just and proper.

## DEMAND FOR TRIAL BY JURY

The Plaintiff hereby demands a TRIAL BY JURY on all issues so trialable.

Respectfully submitted,

Erik B. Cherdak, Plaintiff *Pro Se*
600 Cameron Street
Alexandria, Virginia 22314
(202) 330-1994
email: ebcherdak@gmail.com

February 25, 2015

**Exhibits:**

1. A copy of U.S. Patent No. 8,915,823
2. A printout of a website located at: http://www.marriott.com/hotel-info/nycmq-new-york-marriott-marquis/fitness/hul0cn5/home-page.mi).
3. An excerpt from Defendant's SEC Form 10-K
4. A set of Infringement Charts for Claims 1, 2, 3, 4, 6, 7 & 8 of U.S. Patent No. 8,915,823 in relation to Defendant's in-property fitness centers.